IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHELLY OLIVA,                    )
individually,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )        Civil Action No.: 1:11-cv-00232MP-GRJ
                                 )
INFINITE ENERGY, INC.            )
                                 )
        Defendant.               )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, Plaintiff, SHELLY OLIVA, by and through undersigned counsel, and in

support of her Motion for Summary Judgment against Defendant, INFINITE ENERGY, INC.

states the following:

**I.    INTRODUCTION**

This matter arises under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.

201, *et seq.* ["FLSA"] Plaintiff Shelly Oliva was employed as a debt collector by Defendant

Infinite Energy from May 2008 until she was terminated in October 2011.  Throughout the time

she worked for Defendant, Plaintiff routinely worked more than 40 hours per week without

receiving overtime compensation.

Plaintiff now moves for summary judgment on the following issues:  (1) Collectors at

Infinite Energy are non-exempt employees who are required to be paid overtime if they work

more than 40 hours in a week; (2) Because Infinite Energy failed to keep time records for three

years for non-exempt employees such as Ms. Oliva, to the extent Defendant failed to comply

with the FLSA's record keeping requirements, Ms. Oliva is entitled to a presumption as a matter

of law that she worked the amount of overtime stated on the Affidavit attached as Exhibit "A" to the summary judgment motion; and (3) Infinite Energy's failure to properly classify Ms. Oliva as an exempt employee was a willful violation of the Fair Labor Standards Act.

## II.     LEGAL ANALYSIS

### A.     Summary Judgment Standard

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1309 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "If the nonmoving party fails to 'make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

### B.     Collectors are Non-Exempt under the FLSA

As will be explained in more detail below, it is uncontroverted that Plaintiff fails to meet the criteria necessary to qualify for the FLSA's administrative exemption, the sole exemption Defendant contends applies to Plaintiff.

The FLSA does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." Id. 29 U.S.C. § 213(a)(1). An employee is "employed in a bona fide administrative capacity" when he or she is:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ; [and where the person's primary duty]

(2) . . . is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

2

(3) . . . includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). "[T]he administrative operations of the business include the work of employees 'servicing' the business, such as, for example, 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.'" Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22138 (Apr. 23, 2004). An exempt administrative employee includes "not only [an employee] who participate[s] in the formulation of management policies or in the operation of the business as a whole" but an employee who "either carr[ies] out major assignments in conducting the operations of the business. . . or whose work affects business operations to a substantial degree, even though the [employee's] assignments are tasks related to the operation of a particular segment of the business." 69 Fed. Reg. at 22138. An employee's "primary duty" is administrative if for 50-percent of the time the employee is "responsible for work which is characteristic of employment in a bona fide administrative capacity . . . related to management policies or general business operations." *Friedman v. S. Fla. Psychiatric Assocs.*, 139 Fed. Appx. 183, 185 (11th Cir. Fla. 2005) (citing 29 C.F.R. §§ 541.103 and 541.206).

"The employer carries the burden of proving the exemption, and [the court will] narrowly construe the overtime provisions of section 207 against the employer." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004).

1.    **Plaintiff was not paid on a salary basis**

In order to be classified as exempt under the administrative exemption, an employee must be paid on a salary basis. *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994)(citing 29

C.F.R. § 541.1(f)).  According to the FLSA regulations:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Deductions from pay may be made, consistent with salaried status, only:  when the employee is absent "from work for a day or more for personal reasons other than sickness or accident,"; when the employee is absent for a day or more due to sickness or disability, "if the deduction is made in accordance with a bona fide [sick leave] plan,"; or when the employee is penalized "in good faith for infractions of safety rules of major significance."

*Id.* at 1340-41 (internal citations omitted).

Defendant's corporate designee testified "Collectors are paid their annual salary, assuming they fulfill their job duties and work the expected hours per week." Exhibit B at page 73, lines 21 to 22. As Plaintiff explained in her Affidavit, and as shown in the pay stubs attached thereto, her pay varied from week to week and her pay was sometimes docked for partial day's absences. *See* Exhibit A. Clearly, this conduct mandates a finding that Plaintiff was not an exempt employee within the meaning of the FLSA.

In *Friedman v. S. Fla. Psychiatric Assocs.*, 139 Fed. Appx. 183, 185 (11th Cir. 2005), the court held:  "The docking of pay for partial days' absences subjects the employee's compensation to reduction because of a variation in the quantity of work performed. See 29 C.F.R. § 541.118(a) (2002).  A deduction for a partial day's absence is not one of the allowable deductions." *See also Spradling v. City of Tulsa,* 95 F.3d 1492, 1501 (10th Cir. 1996) (holding city's policy "inconsistent with the salary test" where unwritten policy reduced leave time for absences of less than a day and subjected pay to docking if employee lacked sufficient leave time); *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983) (holding that exempt employee "may not be docked pay for fractions of a day of work missed"); *Mich. Ass'n of Gov't*

4

*Employees v. Mich. Dep't of Corr.*, 992 F.2d 82, 84 (6th Cir. 1993) (interpreting regulatory silence regarding partial-day deductions as implication that such deductions are inconsistent with salary status).

Thus, because Plaintiff's pay was sometimes docked because of partial day's absences, Plaintiff does not meet the salary test and is entitled to partial summary judgment on the issue of whether she was an exempt employee.

### 2.     Plaintiff did not exercise discretion and independent judgment

The administrative exemption also does not apply because Plaintiff did not exercise discretion and independent judgment with respect to matters of significance.  To the contrary, Plaintiff performed her job as a collector with little latitude and within well-defined parameters and accordingly, is entitled to summary judgment as a matter of law because the elements of the administrative exemption are absent.

An individual exercises "discretion and independent judgment" when they engage in "the comparison and the evaluation of possible courses of conduct, and act[] or mak[e] a decision after the various possibilities have been considered." *Darosa v. Fla. Default Law Group, P.L.*, 2011 U.S. Dist. LEXIS 94871 (M.D. Fla. Aug. 24, 2011) citing 29 C.F.R. § 541.202(a).  In order to possess such discretion the employee must have the authority to make "independent choice[s], free from immediate direction or supervision. . . even if their decisions or recommendations are reviewed at a higher level." *Id.* citing 29 C.F.R. § 541.202(c).

In *Viola v. Comprehensive Health Mgmt.*, 2010 U.S. Dist. LEXIS 137399, 9-10 (M.D. Fla. Dec. 29, 2010), the court identified the issues to be considered in determining if an employee exercises discretion and independent judgment:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or

making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed. 29 C.F.R. § 541.202(a). The regulation describes several factors to consider in determining whether an employee exercises the requisite level of discretion as to matters of significance, which factors include: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances. 29 C.F.R. § 541.202(b).

*Id.* (non C.F.R. internal citations omitted). *See also* 29 C.F.R. § 541.704 (noting "employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances" are not exempt).

29 C.F.R. § 541.202(c) further provides:

The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. Exempt employees may use manuals, guidelines or other established procedures if they contain or relate to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills. Employees who simply apply well-established techniques or procedures within closely prescribed limits, however, are not exempt. The exercise of discretion and independent judgment also does not include clerical or secretarial work; recording or tabulating data; or performing other mechanical, repetitive, recurrent or routine work.

Applying the regulations, it is clear that Plaintiff does not even arguably qualify for the

administrative exemption and summary judgment is appropriate as a matter of law.  As a collector, Ms. Oliva's most significant responsibilities were making phone calls and collecting past due balances.  Exhibit C at page 29, lines 19 to 24.

Ms. Oliva's immediate supervisor, Terrill Staton testified at a deposition in this matter and her testimony is particularly telling.  See Exhibit C at page 20, lines 7 to 12 (testifying that she was Ms. Oliva's immediate supervisor during the entire time Ms. Oliva worked for the Defendant) and *see id.* at page 76, lines 12 to 19 (testifying that collectors had to listen to her and do what she told them to do).  When asked if Ms. Oliva ever provided expert advice to anybody at Infinite Energy, her supervisor testified:

Q.     Can you think of any instances where she offered advice that you considered to be expert advice?

A.     Advice to me personally?

Q.     Advice to you personally or to anybody at Infinite Energy that you considered to be expert advice?

A.     No.

Exhibit C at page 11, lines 3 to 10.

She was also asked if she considered Ms. Oliva to be an expert collector and in that regard, she testified:

Q.     Would you say that Ms. Oliva was an expert collector or did she rank about the same as the other collectors in your department?

A.     I would say as far as—as far as call volume, she was substandard.

Exhibit C at page 10, lines 10 to 14.

Ms. Oliva did not have any responsibility for operating the collections department.  *Id.* at

page 13, lines 20 to 22. Ms. Staton testified "A collector is a collector." *Id.* at page 15, line 7. All collectors except for one of the nine to ten employee group in which Plaintiff worked collected on both commercial and residential accounts. *Id.* at page 15, lines 8 to 15. Two descriptions of collector job duties were provided to Ms. Staton at her deposition and she testified that the descriptions were over-inclusive and that collectors have fewer responsibilities today than at the time the descriptions were created. *Id.* at page 13, line 23 to page 16, line 22. When asked if collectors have leeway to deviate from their specified job duties, Ms. Staton testified as follows:

> Q.   If a collector in your department didn't want to do one of the essential functions of the job, could they say look, I'm not doing that, I don't want to do that, let somebody else do it?
>
> A.   No.
>
> Q.   Or would they probably be terminated if they refused to do one of the essential functions?
>
> A.   I would not say they would be terminated on the first time of not doing one of the essential functions, but it's possible that they could be written up and eventually terminated for not following.
>
> Q.   Okay. But they are expected to follow the job descriptions that Infinite Energy provides, correct?
>
> A.   Correct.

Exhibit C at page 17, lines 1 to 17.

Ms. Staton testified that the job description attached to her deposition transcript at Exhibit 3 accurately describes the qualifications for a collector at Infinite Energy. Exhibit C at page 20,

lines 4 to 6. Per the job description, there is no education requirement, and collectors at Infinite Energy need only one year of collection experience and proficiency in MS excel. *See* Exhibit C at Exhibit 3. Even Plaintiff's supervisor had only minimal education, as she testified she completed one year and one-half of college and had no other schooling or training other than taking some computer classes. Exhibit C at page 7, lines 5 to 23.

Ms. Staton also testified that she continued to work on problem accounts which were not the type of accounts that a normal collector would handle. Exhibit C at page 20, lines 16 to 22. Ms. Oliva's team leader, Thomas McDonald testified similarly at his deposition that like Ms. Staton, he handled problem accounts which were accounts that were beyond the abilities of the regular collectors to handle. Exhibit D at page 35, lines 2 to 9. Mr. McDonald also testified that he had more responsibility than collectors, which included handling "escalated calls" which he explained is "When the collectors have customers that they are not able to resolve the issue for the customer or if the customer becomes escalated, they give them to me to try to do what's right for the company and the customer." *Id.* at page 7, lines 4 to 7. He further explained "either if the situation needs additional approval beyond what the collectors can approve or if it's just a matter of the customer's out of control with the collector, then they would put them through to me to try to calm the situation down." *Id.* at page 7, lines 10 to 14. In other words, he handled calls that were too difficult for a regular collector to handle and he stated that he made decisions a collector could not make. *Id.* at page 7, lines 15 to 20.

With regard to Ms. Oliva advising management, Ms. Staton testified as follows:

Q. So it's fair to say that she didn't offer any consulting or expertise to management, to the best of your knowledge?

A. Correct.

9

Q.     She wasn't involved with planning any long-term or short term business objectives for Infinite energy?

A.     No.

Q.     Did management ever ask her to perform any investigations?

A.     No.

Exhibit C at page 22, lines 9 to 23.  See also Exhibit D at page 24, lines 12 to 24.

She testified that Defendant maintains a separate department for dealing with customer complaints and that Ms. Oliva would forward complaints that arose during collection calls to Ms. Staton rather than dealing with the complaints herself or addressing them to her team leader. Exhibit C at page 24, lines 3 to page 25, line 8.  Ms. Oliva was bound to follow the other departments' determinations regarding resolving such complaints.  *Id.* at page 25, lines 11 to 13.

Ms. Staton was asked about Defendant's collection procedures and she testified as follows:

Q.     Were there specific procedures that she had to perform in order to keep her job?

A.     If you're asking for something that's written, no, but as far as the procedures of the department, we had procedures that we followed, yes.

Q.     Okay.  And she had to follow those procedures too, right?

A.     Yes.

Q.     And they were specific, correct?

A.     Yes.

*Id.* at page 29, lines 6 to 15.  Defendant's corporate designee, Robert Thomas testified "There are well established practices for performing the job of a collector."  Exhibit B at page 29, lines 7 to 13.  Mr. Thomas also testified that there are specific procedures dictated by Infinite Energy that

collectors had to follow in order to do their job. *Id.* at page 29, lines 14 to 23. To the extent Defendant claims Ms. Oliva negotiated on behalf of Infinite Energy, Ms. Oliva had the authority to waive $10 late fees, but Ms. Staton testified with regard to creating payment arrangements that Defendant had specific criteria that Plaintiff had to follow. *Id.* at page 30, lines 9 to 21. To the extent Ms. Oliva evaluated different options for past due customers, Ms. Staton testified:

> Q. But she had to apply criteria that were set by Infinite Energy to create those payment arrangements, correct?
>
> A. Correct.
>
> Q. So, for example, she couldn't stretch payments out as long as she wanted to, could she?
>
> A. No.
>
> Q. And she couldn't forgive balances, you said, to any extent, right?
>
> A. Correct.
>
> Q. So the bargaining chip that she had was the waiver of the $10 late fee?
>
> A. No. She had—she had the ability to set arrangements within parameters and was expected to do that, to make those arrangements with the customers.
>
> Q. Okay. And those were very specific parameters, correct?
>
> A. Yes and no. Yes, we have very specific payment arrangements that are set that are made by the system, and that is customer pays half today and half in two weeks. However, as a collector, she was afforded a little bit of bargaining room where she could extend that customer out a few extra days.

Exhibit C at page 31, lines 3 to 25.

She could also offer payment arrangements over six month periods of time, but she could

not make any decisions for the customers. *Id.* at page 32, lines 3 to 10. She did not have

authority to direct collections support personnel on how to do their job. *Id.* at page 32, lines 21

to 24. Ms. Oliva did not have authority to recommend changes to Defendant's policies and

procedures and did not implement any policies or help to revise any procedures. *Id.* at page 33,

lines 9 to 11; page 34, lines 13 to 17. She was not responsible for monitoring any employee's

job performance and could not discipline any employees. *Id.* at page 33, lines 9 to 14. She could

not bind Defendant "other than within the parameters that Infinite Energy prescribed." *Id.* at

page 33, lines 22 to 25. Ms. Staton testified:

> Q.    And if there was something that was going to have a significant financial impact
> on Infinite Energy, collectors were supposed to talk to their team leader or to you before making
> any decisions, right?
>
> A.    Correct.
>
> Q.    Can you think of any examples of situations where collectors had to consult you
> in order to avoid making a decision on their own where that decision would have had a
> significant financial impact?
>
> A.    Specifically?
>
> Q.    Yes.
>
> A.    No.

*Id.* at page 34, lines 1 to 12. Defendant's corporate designee likewise testified that Plaintiff

could only negotiate on behalf of Defendant within parameters that Defendant set and even then,

only with regard to collections. Exhibit B at page 35, lines 14 to 21.

Ms. Oliva did not have authority to interpret Infinite Energy's policies on her own. *Id.* at

page 34, lines 23 to 25. Instead, "she was bound to follow what Infinite Energy said in terms of

how their policy was going to be interpreted." *Id.* at page 35, lines 1 to 4. Defendant's corporate designee was unaware of Plaintiff ever recommending any changes to Defendant's policies and procedures. Exhibit B at page 34, lines 18 to 21.

Collectors could not deviate from the manner of contacting customers that Defendant prescribed. Exhibit C at page 39, line 18 to page 40, line 3. Also, Ms. Oliva could not create her own schedule or control any other collectors. *Id.* at page 49, lines 17 to 22.

New collectors received on the job training from Defendant's existing collectors and Ms. Oliva did not have any special responsibility for training new collectors. *Id.* at page 35, lines 15 to 18. She did not have any input into Defendant's hiring practices. *Id.* at page 35, line 24 to page 36, line 1.

Defendant's job summary for collector, provides with regard to job summary:

> Contacts commercial or residential customers an in [sic] attempt to collect monies and/or to establish repayment plans; updates payment records, and advises customers of actions to take. **Working under immediate supervision, performs work within established policies and procedures with limited latitude.**

Exhibit C at Exhibit 7 (emphasis added). See also Exhibit C at Exhibit 6 (Document entitled Collections Procedure states its Purpose as "To provide a uniform and consistent method for residential and commercial account collections for Georgia and Florida accounts.") Clearly, working under immediate supervision and performing work within established policies and procedures with limited latitude is inconsistent with exercising discretion and independent judgment.

The exception also does not apply because Plaintiff performed repetitive, recurrent and routine work. Ms. Oliva was responsible for contacting 400 to 600 customers per week, with regard to which Ms. Staton testified "it is repetitive. Yes." *Id.* at page 40, lines 6 to 10; *see also* Exhibit B at page 39, lines 8 to 13 ("typically the average collector is expected to cover

anywhere from 400 to 700 accounts per week") and Exhibit D at page 13, lines 4 to 8 ("Most of the collectors in a typical week will make 5 to 600 contacts." and *id.* at page 48, lines 16 to 20 ("when I first started there, the previous manager expected—I think it was about 40 contacts a day, 40 or so. And we have over the last four years brought that number closer to 125 per day, which falls a little more in line with what the rest of the collections industry does.") In fact, at one point, Defendant's collectors were each responsible for 25,000 accounts per month. *Id.* at page 38, line 22 to page 39, line 6. Prior to being hired, collectors were given a typing test and Vivian Boza, Defendant's Controller testified the reason was "the collector needs to have a certain proficiency in typing in order to be able to document those conversations and quickly move onto the next call." Exhibit E at page 29, line 13 to page 30, line 2. This recurrent and repetitive work is outside the FLSA's administrative exemption.

Applying the deposition testimony to the regulations, it is clear that Ms. Oliva did not handle matters of significance, advise management or exercise discretion and independent judgment. Accordingly, summary judgment is appropriate on this issue.

There are several reported decisions from the 11th Circuit that deal with collectors who sued under the FLSA, but none of those decisions deal specifically with the issue of whether the administrative exemption applies. *See Lane v. Capital Acquisitions & Mgmt. Co.*, 2006 U.S. Dist. LEXIS 96422 (S.D. Fla. Apr. 13, 2006); *Cherenfant v. Nationwide Credit, Inc.*, 2004 U.S. Dist. LEXIS 30458 (S.D. Fla. May 7, 2004); *Barrett v. Capital Acquisitions Mgmt. Co.*, 2004 U.S. Dist. LEXIS 30454 (S.D. Fla. Mar. 12, 2004)(granting 216(b) certification to class of collectors).

Other federal courts have ruled on the issue. For example, in *Haber v. Americana Corp.*, 378 F.2d 854 (9th Cir. 1967), the court held that the administrative exemption did not apply

14

because an employee spent his time in the "nonadministrative function of collecting accounts." More recently, in *Gropp v. Education Credit Servs., LLC.*, 1998 U.S. Dist. LEXIS 6635 (E.D. Va. Apr. 9, 1998), the court granted summary judgment where an employer misclassified collectors as exempt. In *Gropp*, the court found that the employer's payroll practices of making partial day deductions, and the collectors' failure to meet the discretion and independent judgment test meant that collectors were non-exempt as a matter of law. The facts of *Gropp* are nearly identical to the facts of this case. *See id.* (focusing on use of on-the- job training for new collectors and lack of education.) *See also Lewis v. Nat'l Fin. Sys.*, 2007 U.S. Dist. LEXIS 62320 (E.D.N.Y. Aug. 23, 2007)(employer did not claim that collectors were exempt; issue was whether collectors were properly compensated for their overtime under the "coefficient system").

Thus, applying the case law and the federal regulations, it is clear that Ms. Oliva was misclassified as exempt by Defendant.

**C.     Defendant's Failure to Maintain Accurate Time Records**

It is undisputed that Defendant has not retained any records regarding the hours that Ms. Oliva worked prior to September 2009, and has no log in/log off records prior to October 11, 2010.

29 U.S.C. § 211(c) provides:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. § 211(c).

The Department of Labor regulations further require employers to preserve, for three

years, records of the (1) total daily and weekly hours employees work; (2) employees' regular

hourly rates of pay for each week that overtime is worked; (3) total daily or weekly straight time

earnings and (4) total weekly premium pay for overtime hours. *See* 29 C.F.R. §§ 516.2-516.5.

Although a violation of these requirements "does not result in a penalty per se, . . . an employer's

failure to produce evidence of the hours an employee worked and wages paid may result in the

court having to approximate damages." *See Genarie v. PRD Management, Inc.*, 2006 U.S. Dist.

LEXIS 9705, 2006 WL 436733, at *15 (D.N.J. Feb. 17, 2006) (citing *Anderson v. Mt. Clemens

Pottery Co.*, 328 U.S. at 687-88); *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d

Cir. 1991) ("In the absence of adequate employer records of employees' wages and hours, as

required by the FLSA, the solution is not to penalize the employees by denying recovery based

on an inability to prove the extent of undercompensated work, but rather to allow the employee

or the Secretary to submit sufficient evidence from which violations of the Act and the amount of

an award may be reasonably inferred."). In *Anderson,* the Supreme Court held that where an

employer fails to keep time records:

> an employee has carried out his burden if he proves that he has in fact performed
> work for which he was improperly compensated and if he produces sufficient
> evidence to show the amount and extent of that work as a matter of just and
> reasonable inference. The burden then shifts to the employer to come forward
> with evidence of the precise amount of work performed or with evidence to
> negative the reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court may then
> award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88.

In this case, Defendant has no records that contradict Plaintiff's testimony that she

worked as follows:

In this lawsuit, I am seeking damages for unpaid overtime hours as follows:

October 2008 to end of 2008:  8 weeks x 10 hours avg. per week x $23.12

2009 until father's death: 44 weeks x 10 hours avg. per week x $24.94

2009 after father's death: 6 weeks x 6 hours avg. per week x $24.94

Jan. 1 2010 to March 1, 2010: 8 weeks x 6 hours avg. per week x $26.45

March 1, 2010 to end of year: 30 weeks x 3 hours avg. per week x $26.45[1]

Exhibit A at ¶ 8.

Defendant's corporate designee testified at his deposition:

Q.     Do you know why I wasn't provided with records that predate October 11, 2010?

A.     Probably because the records weren't available.

Q.     Is it something that can be found somewhere?

A.     I'm not sure. I think if it can be found and it's been requested, it's been provided.

Exhibit B at page 59, lines 19 to 24.[2]

Because Plaintiff's testimony is uncontroverted, Plaintiff is entitled to partial summary judgment regarding the number of hours she worked for the time period before October 11, 2010.

**D.     Defendant's Violation of the FLSA Was Willful**

Ms. Oliva's schedule was initially five 9 hour days per week. *See* Exhibit C at Exhibit 7. Her schedule changed to 8:00 a.m. to 7:00 p.m., four days per week. Exhibit F at page 10, lines 3 to 7. Plaintiff testified that she typically left work between 7:30 and 9:00 p.m., and sometimes worked until 10:00 p.m. *Id.* at page 12, lines 15 to 25. Ms. Staton knew that Plaintiff was working past her scheduled departure time. Exhibit C at page 50, lines 5 to 8; Exhibit F at page

---

[1]  Defendant's phone records begin October 11, 2010, so it has no records that dispute Ms. Oliva's testimony prior to that date.

[2]  At Mr. Thomas's deposition, Defendant produced additional time records that went back as far as February 2010. Defendant also provided time records attached as Exhibit 9 to Ms. Staton's deposition transcript, but those time records only show Ms. Oliva's scheduled hours, not her actual hours worked.

19, line 23 to page 20, line 6. Plaintiff testified that she did not usually take lunch breaks. Exhibit F at page 15, lines 3 to 5. Plaintiff testified that she worked 50 to 55 hours per week from May 2008 until March 2010, and then worked between 42 and 45 hours per week (during the weeks in which she worked overtime). *Id.* at page 18, lines 8 to 15.[3]

The FLSA provides that "[a]ny employer who violates . . . [29 U.S.C. § 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, an employer may avoid liquidated damages by demonstrating that it acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991).

This determination has both a subjective and objective component. *Id.* The subjective component refers to the employer's actual belief. *See id.* On the other hand, the objective component measures the reasonableness of the employer's belief and appears to "require. . . some duty to investigate potential liability under the FLSA." *Moon v. Technodent Nat'l, Inc.*, 2008 U.S. Dist. LEXIS 40423 (M.D. Fla. 2008) citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979). As for procedural matters, the defendant bears the burden of avoiding the imposition of liquidated damages, *Moon*, 2008 U.S. Dist LEXIS at * 14, citing *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987), and "the Act assigns to the judge the role of finding whether the employer acted in subjective and objective good faith for liquidated damages purposes." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008) (citing 29 U.S.C. § 260); *see also Nash v. Resources, Inc.*, 982 F.

---

[3] Ms. Oliva's Affidavit contains an itemized breakdown of her overtime claim, including the number of weeks for which she is seeking overtime. *See* Exhibit A.

Supp. 1427 (D. Or. 1997) (granting plaintiff's motion for summary judgment on defendant's failure to meet the objective good faith requirement).

The employer's burden to establish "good faith and . . . reasonable grounds" is not a light one. *See Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 Fed. Appx. 183, 185-86 (11th Cir. 2005) (employer's testimony that it researched the FLSA in the past was insufficient because it did not update its research); *Spires v. Ben Hill County*, 980 F.2d 683, 690 (11th Cir. 1993) (employer failed to demonstrate good faith because "it took no action whatsoever to investigate its compliance with the [FLSA] until it was contacted by the plaintiff's counsel"); *McGuire v. Hillsborough County, Fla.*, 511 F. Supp. 2d 1211, 1216-17 (M.D. Fla. 2007) (employer failed to show good faith because it relied on non-binding case law from the outside the Eleventh Circuit and failed to adequately consider Department of Labor regulations).

Although summary judgment is frequently inappropriate on the issue of Defendant's willfulness, it is appropriate where there is no evidence the Defendant had an objectively reasonable belief that it was complying with the FLSA. At deposition, Defendant's Controller, Vivian Boza testified:

Q. At any point did you ever ask anybody at Infinite Energy to make an inquiry into whether collectors should be paid overtime?

A. No.

Q. Do you know who would have been responsible for doing that within your department?

A. I do not.

Exhibit E at page 7, lines 19 to 25. When asked if the federal regulations were consulted when Defendant opted to classify collectors as exempt, Ms. Boza testified "I didn't. I made my

recommendations to HR based on my knowledge and experience with the company, and my observation of what the collectors do." *Id.* at page 11, lines 15 to 19. Ms. Boza did not consider whether collectors outside of Infinite Energy were classified as exempt. *Id.* at page 13, lines 10 to 13. And, Ms. Boza did not consult any case law or consider anything other than how collectors had been classified in the past at Infinite Energy, and what their job duties were. *See id.* at page 13, lines 14 to 20. The issue of proper classification of the collector position arose twice during a ten year period, but Ms. Boza did not conduct any further inquiry the second time. Exhibit E at page 16, lines 3 to 24. Ms. Staton corroborated this, testifying she was unaware of Defendant undertaking *any* investigation into whether collectors are entitled to overtime. Exhibit C at page 51, lines 13 to 16 (emphasis added).

Defendant's corporate designee in this matter was Robert Thomas, CFO. At his deposition, Mr. Thomas testified that he was the best person at Infinite Energy to ask the reason that Infinite Energy collectors are classified as exempt employees. Exhibit B at page 4, line 19 to page 6, line 4. When asked his understanding of how the FLSA works, Mr. Thomas testified "I have a very basic understanding" which was "[t]hat employees that work over 40 hours a week that are subject to overtime are entitled to time and a half pay for hours worked over 40 hours in a week." *Id.* at page 7, lines 19 to 25. When asked how collectors came to be classified as exempt, he testified:

Q.    How did Infinite Energy arrive at the determination that collectors are exempt?

A.    That determination was made in excess of eight to ten years ago by personnel that are no longer at the company. There are no corporate records that exist as to how that determination was made. The current corporate knowledge is that that's the way it was designated at the time and has always remained so.

*Id.* at page 10, lines 3 to 10.

Mr. Thomas testified that Defendant twice revisited the issue of whether collectors should be classified as exempt. *Id.* at page 11, lines 7 to 13. He testified that in reaching that determination, Defendant compared collectors at Infinite Energy to collectors who worked for other companies, but that he was unaware of any other companies that classify the collector position as exempt. *Id.* at page 13, lines 3 to 11. He elaborated: "The recommendation from HR was based on how others are paid, not necessarily based on an examination of the requirements under the FLSA." *Id.* at page 13, lines 18 to 20. He further testified "Another consideration was the potential negative morale impact of taking a salaried employee and converting them to an hourly employee. At the time it was determined that negative morale impact was more of a con than the pro of potentially having a comparable pay structure to what others were paying. Again, it was not part of any sort of review of the FLSA from the HR perspective. It was merely a comparison of what other people's practices were." *Id.* at page 14, lines 3 to 11. He further testified:

Q.     Okay. So there was no—nobody ever consulted the Department of Labor.

A.     Not that I'm aware of.

Q.     Okay. And you're not aware of anybody reviewing the Department of Labor guidelines?

A.     Not in the context of those conversations, no.

Q.     Are you aware of anybody consulting the Department of Labor guidelines at any point in terms of determining whether or not collectors are supposed to be exempt under the FLSA?

A.     I would imagine as part of this case those have been reviewed.

Q.      But not prior to this lawsuit?

A.      Not that I'm aware of.

Q.      Do you know if anybody did any legal research into whether collectors are typically classified as exempt, or non-exempt, looking at case law?

A.      I'm not aware.

Q.      Have you tried to find whether those—

A.      Sorry, I'm speaking over you. I didn't mean to. In my answer in that last—not being aware is in the context of prior to this litigation.

*Id.* at page 14, line 12 to page 15, line 8.

On the other hand, Defendant's corporate designee was aware "that collectors from time to time may work more than 40 hours a week in order to meet their targets for their own personal bonus." Exhibit B at page 53, lines 10 to 12.

Defendant's bad faith with regard to treating its employees was further shown by the Separation Agreement Ms. Oliva was requested to sign. *See* Exhibit B at Exhibit 2. In that regard, Defendant's corporate designee conceded that Defendant sought waivers of employee's rights under various statutes, including the FLSA and also sought a waiver of entitlement to unemployment benefits, which violates *Florida Statutes* § 443.041.[4] Exhibit B at page 82, lines

---

[4]  That statute in pertinent part provides:

(1) Waiver of rights void. --Any agreement by an individual to waive, release, or commute her or his rights to benefits or any other rights under this chapter is void. Any agreement by an individual in the employ of any person or concern to pay all or any portion of any employer's contributions, reimbursements, interest, penalties, fines, or fees required under this chapter from the employer, is void. An employer may not directly or indirectly make or require or accept any deduction from wages to finance the employer's contributions, reimbursements, interest, penalties, fines, or fees required from her or him, **or require or accept any waiver of any right under this chapter by any individual in her or his**

12 to 17, testifying regarding Exhibit 2 to his deposition transcript.

At best, Defendant refused to undertake an appropriate investigation into whether it properly classified collectors. Defendant's proffered reason for not reclassifying collectors, namely concern about the impact the reclassification would have on employee morale, is not the sort of reason that will excuse Defendant's misconduct. To the contrary, there is no evidence Defendant ever undertook any sort of investigation into whether its classification was correct. For these reasons, in this case, summary judgment is appropriate on the issue of the willfulness of Defendant's violation.

## III.  CONCLUSION

Thus, for all of the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant partial summary judgment against Infinite Energy.

DATED this 1st day of June, 2012.

FISHER, BUTTS, SECHREST
& WARNER, P.A.


/s/Matthew W. Birk
Matthew W. Birk
Florida Bar No. 0151238
5200 S.W. 91st Terrace, Suite 101
Gainesville, Florida 32608
(352) 373-5922
(352) 373-5921 FAX
ATTORNEY FOR PLAINTIFF

---

employ. An employer, or an officer or agent of an employer, who violates this subsection commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083. (emphasis added)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was furnished by CM/ECF and regular U.S. Mail to A. Corinne Clements, Infinite Energy, Inc., 7001 SW 24th Avenue, Gainesville, FL 32607, ATTORNEY FOR DEFENDANT, this 1st day of June, 2012.

**FISHER, BUTTS, SECHREST &
WARNER, P.A.**


 /s/Matthew W. Birk
**Matthew W. Birk**
Florida Bar No.: 92265
5200 S.W. 91st Terrace, Suite 101
Gainesville, FL  32608
(352) 373-5922
(352) 373-5921 FAX
ATTORNEYS FOR PLAINTIFF
