IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHELLY OLIVA,

      Plaintiff,

v.                                            CASE NO. 1:11-cv-00232-MP-GRJ

INFINITE ENERGY INC,

      Defendant.

_____/

**O R D E R**

      This matter is before the Court on Docs. 27 and 30, motions for partial summary judgment filed by plaintiff and defendant, respectively.  Also pending is Doc. 32, defendant's motion to strike plaintiff's jury trial demand, to which plaintiff responded at Doc. 35.  For the reasons which follow, the defendant's motion for partial summary judgment regarding the applicability of Fla. Stat. § 443.041(1) is granted.  Plaintiff's motion for partial summary judgment is granted in part and denied in part, and defendant's motion to strike plaintiff's jury trial demand is granted.

      Plaintiff Shelly Oliva was employed as a delinquent account collector by Defendant Infinite Energy from May 2008 until she was terminated in October 2011.  Oliva alleges that throughout the time she worked for Defendant, she routinely worked more than 40 hours per week without receiving overtime compensation.  She also alleges that defendant failed to pay her certain bonuses she had earned by meeting certain performance benchmarks.  Finally, she alleges that defendant willfully, deliberately and intentionally sought to have plaintiff waive her right to unemployment compensation, in violation of Fla. Stat. § 443.041, by asking her to make that

waiver in a proposed termination agreement.

The plaintiff put these claims into a three count complaint.  Doc. 1.  The first count alleged a violation of Section 207 of the Fair Labor Standards Act ("FLSA") for failure to pay overtime compensation.  Count II alleges that defendant violated Fla. Stat. § 443.041 by requesting that plaintiff waive her right to unemployment compensation in the separation agreement proposed by the defendant.  Count III alleged defendant breached the employment contract by failing to pay out certain bonuses that plaintiff had earned.

The plaintiff moved for partial summary judgment on three issues.  First, the plaintiff argued that there is not a genuine issue of fact regarding whether she can be exempted from the FLSA as an administrative employee.  Second, the plaintiff argued that there is not a genuine issue of fact regarding whether defendant's failure to pay overtime was not based on good faith.  Third, plaintiff argued that there is not a genuine issue of fact regarding the amount of time plaintiff worked before October 11, 2010, because defendant failed to properly maintain records as required by 29 C.F.R. §§ 516.2-516.5.  Plaintiff requests that the Court grant summary judgment that plaintiff's hours were as she testified.

The defendant responded at Doc. 36 to the plaintiff's motion, and also filed its own motion for partial summary judgment, Doc. 30, on a single issue, whether plaintiff can recover under Fla. Stat. § 443.041.  The plaintiff did not respond to Doc. 30.

**Defendant's Motion for Partial Summary Judgment (Doc. 30) on Count II**

We begin with defendant's motion for partial summary judgment in which it seeks judgment on Count II because  Fla. Stat. § 443.041 does not provide relief to plaintiff.  That statute, in the Chapter of the Florida Statutes covering unemployment compensation, provides:

(1) Waiver of rights void.--Any agreement by an individual to waive, release, or

> commute her or his rights to benefits or any other rights under this chapter is void.
> Any agreement by an individual in the employ of any person or concern to pay all
> or any portion of any employer's contributions, reimbursements, interest,
> penalties, fines, or fees required under this chapter from the employer, is void. An
> employer may not directly or indirectly make or require or accept any deduction
> from wages to finance the employer's contributions, reimbursements, interest,
> penalties, fines, or fees required from her or him, or require or accept any waiver
> of any right under this chapter by any individual in her or his employ.  An
> employer, or an officer or agent of an employer, who violates this subsection
> commits a misdemeanor of the second degree, punishable as provided in s.
> 775.082 or s. 775.083.

In the termination and release agreement offered to plaintiff (Doc. 1, attach. 1), the defendant

proposed that "Employee hereby waives all rights and claims to unemployment compensation."

The proposed release agreement was never signed, however. Doc. 1, ¶ 21.  Plaintiff argues that

by including this language in the proposed termination agreement, defendant violated the

statute's provision against requiring or accepting any waiver of any right under the

unemployment compensation law.

 The Court agrees with the defendant, however, that the statute contains "no evidence in

the language of the statute or the statutory structure that a private cause of action against [a

noncomplying employer] was contemplated by the legislature in enacting this statute" as

required by Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla. 1994).  Also, the Court agrees that

the employer did not "require or accept" any waiver, since the agreement was never entered into.

Thus, the statute is not triggered in this case.  Summary judgment on Count II in favor of the

defendant is appropriate.

**Plaintiff's Motion for Partial Summary Judgment (Doc. 27) on the issue of whether
plaintiff was misclassified as an exempt administrative employee**

 Section 207 of the FLSA provides that "no employer shall employ any of his employees

... for a workweek longer than forty hours unless such employee receives compensation for his

employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employer is exempt from this overtime requirement if the employee is "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  Infinite Energy claims that Oliva was an administrative employee and thus exempt from FLSA overtime requirements.  Coverage under FLSA is to be liberally construed in favor of the employee and its exemptions narrowly applied against the employer. Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 808 (11th Cir.1992). Thus, the employer bears the burden of establishing a particular exemption by "clear and affirmative evidence." Id.

Pursuant to the federal regulations guiding implementation of FLSA, an employee is considered a bona fide administrative employee if the employer can establish all three of the following elements:

(1) the employee is compensated on a salary or fee basis at a rate of not less than $455 per week ,

(2) her primary work duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and

(3) her primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a).

With regard to the first element, the Court concludes that the parties create a genuine issue of material fact concerning whether she is paid on a salary basis.  An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject

to reduction because of variations in the quality or quantity of the work performed.  Deductions

from pay may be made, consistent with salaried status, only: when the employee is absent "from

work for a day or more for personal reasons other than sickness or accident, "; when the

employee is absent for a day or more due to sickness or disability, "if the deduction is made in

accordance with a bona fide [sick leave] plan,"; or when the employee is penalized "in good faith

for infractions of safety rules of major significance.  If an employee's pay is reduced for partial

day absences, the employer will not be allowed to consider the employee paid "on a salary

basis."  Avery v. City of Talladega, 24 F.3d 1337, 1340-41 (11th Cir. 1 994)(citing 29 C.F.R. §

541.1(f)).

Here, plaintiff averred in her Affidavit that her pay was sometimes docked for partial

day's absences, and the pay stubs attached to her Affidavit show that her pay fluctuated from

week to week although she was supposed to have been paid on a salary basis. See Exhibit A to

Doc. 27.  On the other hand, defendant offered the affidavit of Carol Lambert, Payroll Account

at Infinite Energy, in which she averred that any variance from pay check to pay check was due

to "rounding differences and bonus payments" which were typically paid around the beginning

of each month if plaintiff were eligible.  Doc. 36, attach. 1.  This conflict in the evidence creates

a genuine issue of material fact.  Thus, element one of the administrative exemption will not be

the basis for summary judgment for either side.

The second element from § 541.200 is whether plaintiff's primary work duty is "the

performance of office or non-manual work directly related to the management or general

business operations of the employer or the employer's customers."  As an initial matter, the

parties appear to agree that plaintiff performed "office or non-manual work."  However, for the

reasons given below, the record reveals that plaintiff's primary duty is not "directly related to

management or general business operations of the employer."[1]   The regulations implementing

the FLSA define "primary duty" as "the principal, main, major or most important duty that the

employee performs." 29 C.F.R. § 541.700. A "determination of an employee's primary duty must

be based on all the facts in a particular case, with the major emphasis on the character of the

employee's job as a whole." Id.  Factors to consider include: (1) the importance of the employee's

primary duty compared with other duties; (2) the amount of time the employee spends on the

primary duty; (3) the employee's freedom from direct supervision; and (4) the relationship

between the employee's salary and the wages paid to other employees for the other duties

performed by the employee. Id.

The federal regulations also explain that the phrase "directly related to the management

or general business operations" means that the type of work performed by the employee is

"directly related to assisting with the running or servicing of the business, as distinguished, for

example, from working on a manufacturing production line or selling a product in a retail or

service establishment." 29 C.F.R. § 541.201(a).  This prong is met if the employee "engages in

'running the business itself or determining its overall course or policies,' not just in the

day-to-day carrying out of the business' affairs."  Talbott v. Lakeview Ctr., Inc., 2008 WL

4525012, at *4 (N.D.Fla. Sept. 30, 2008) (quoting Bothell v. Phase Metrics, Inc., 299 F.3d 1120,

1125 (9th Cir.2002)).  The regulations note that this type of work includes, but is not limited to,

---

[1]In their motions for summary judgment and supporting documents, the parties spend a great deal of space discussing whether plaintiff exercised "discretion and independent judgment" and no space discussing the "primary duty" of delinquent account collectors.  However, under 29 C.F.R. § 541.200, the Court must first determine, even if discretion and independent judgment were exercised, whether the primary duty of the employee was directed toward the management or general business operations of the employer.  The employer must meet all three elements of § 541.200 to properly classify the employee exempt under the administrative exemption.

work in functional areas such as

> tax; finance; accounting; budgeting; auditing; insurance; quality control;
> purchasing; procurement; advertising; marketing; research; safety and health;
> personnel management; human resources; employee benefits; labor relations;
> public relations; government relations; computer network, internet and database
> administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

In the instant case, plaintiff's job description lists her title as "Collector" and summarizes

her job as follows:

> Contacts commercial or residential customers an in attempt to collect monies
> and/or to establish repayment plans; updates payment records, and advises
> customers of actions to take. Working under immediate supervision, performs
> work within established policies and procedures with limited employee latitude.

Doc. 7, attach. 1. p. 1.  Her "ESSENTIAL DUTIES AND RESPONSIBILITIES" were set out as

follows:

> To perform this job successfully, an individual must be able to perform each essential
> duty satisfactorily
> - Performs collections by contacting commercial or residential customers via
>   phone, email or by written letters within set deadlines
> - Makes initial contact with customer once on age report as past due to attempt to
>   secure a payment
> - Negotiates payment arrangements with customer and follows up to make sure
>   payment arrangements were made
> - Reconciles and balances assigned accounts
> - Switches/disconnects accounts for non-payment
> - Takes payments over the phone
> - Relies on written procedures, experience and judgment to plan and accomplish
>   goals
> - Performs other duties as assigned by supervisor

Id.  As for the required "Knowledge, Skills, and/or Abilities, " the job description required as

follows:

> - Ability to type at least 35 wpm
> - Bilingual (English - Spanish) preferred
> - Knowledge of Debt Collection Practices Act

- Problem Solving - Identifies and resolves problems in a timely manner; gathers and analyzes information skillfully
- Interpersonal Skills - Maintains confidentiality; listens to others without interrupting; keeps emotions under control
- Oral Communication - Speaks clearly and persuasively in positive or negative situations; listens and gets clarification; responds well to questions
- Adaptability - Adapts to changes in the work environment and processes; changes approach or method to best fit the situation
- Planning/Organizing - Prioritizes and plans work activities; uses time efficiently
- Customer Service - Manages difficult or emotional customer situations; responds promptly to customer needs; 1 EXt1\BIT A responds to requests for service and assistance
- Professionalism - Approaches others in a tactful manner; treats others with respect and consideration; accepts responsibility for own actions; follows through on commitments
- Good negotiation skills to obtain successful results from the collections efforts

Id.

Chief Financial Officer Robert Thomas testified that the above job description accurately described the job of a collector at Infinite Energy.  Doc. 27, attach.. 3, pp. 20-21 (of deposition).  He also testified that plaintiff never attended meetings of the board of directors, Id. at 22, was never involved in "planning any long-term or short-term business objectives for Infinite Energy," Id. at 24, and never recommended any changes to Infinite Energy's policies and procedures, Id. at 34.  Terrill Staton, plaintiff's direct supervisor, testified that collectors had to listen to her and do what she told them; that plaintiff never gave advice to her or set policies for the business; that collectors are expected to follow the job descriptions that Infinite Energy provides; that when collectors have customers that they are not able to resolve, the collectors refer them to their team leaders; and that plaintiff was not involved in planning any long term or short term business objectives for Infinite Energy.  Doc. 28, attach. 4 (called Exhibit C by Doc. 28).

The defendant described plaintiff's duty in a way that focused on the independence and significance of the plaintiff's decisions:

Infinite Energy's collectors could make decisions on accounts that had significantly high dollar values of hundreds of thousands of dollars, including, but not limited to: (1) independently deciding whether a delinquent customer's services would be cancelled or would remain with Infinite Energy; (2) independently negotiating payment arrangements with delinquent customers for repayment over periods ranging anywhere from two weeks to six months, (3) deciding whether a delinquent customer's account would be sent to Infinite Energy's legal department, (4) independently evaluating each account and deciding which method of contact to use in trying to collect from the customer, (5) independently arranging their daily work flow, (6) handling customer complaints, and (7) waiving late fees. (Oliva Depo P's Ex. F; Staton Depo P's Ex. C; McDonald Depo P's Ex. D).

Doc. 36, pp. 8-9.

A thorough review of cases nationwide addressing the issue of collectors as potentially exempt administrative employees reveals two things.  First, the issue of whether collecting delinquent accounts is "directly related to the management or general business operations" of the employer appears to be a matter of first impression in the Eleventh Circuit.  Second, no court that has considered the issue, including the Ninth Circuit Court of Appeals, has concluded that collecting accounts or time spent on telephone collections is administrative work "directly related to the management or general business operations" of an employer.[2]  For example in Haber v. Americana Corp., 378 F.2d 854 (9th Cir. 1967) several employees in the collections department of an encyclopedia sales company sued for overtime compensation under the FLSA. The plaintiffs were described as follows by the Ninth Circuit:

In its Beverly Hills office Americana maintained a collection department to

---

[2]Both parties address the unpublished decision in Gropp v. Education Credit Servs., LLC., 1998 U.S. Dist. LEXIS 6635 (E.D. Va. Apr. 9, 1998).  In that case, the district court found that debt collectors at student loan collection agency did not meet the administrative exemption because (1) their pay was docked for partial day absences; and (2) they do not exercise independent discretion and judgment.  The case does not discuss whether collection activity is "directly related to the management or general business operations" of the debt collection company, so Gropp is not applicable to element 2 of 29 C.F.R. § 541.200.

> stimulate collections on accounts receivable.  During 1963 and early 1964
> appellants were employed in the collection department in various capacities.
> Some of appellants were telephone men, whose job was to call persons whose
> accounts were delinquent and urge payment.  Other appellants were 'area
> supervisors', whose functions, inter alia, included supervision of telephone men in
> their area.  Americana operated on a standard 37 1/2 hour work week, for which
> appellants were compensated at a flat monthly rate, regardless of hours worked.
> Appellants were also able to earn 'bonuses' if they collected fifty-one per cent or
> more of the accounts assigned to them on a monthly basis.

Id. at 855.  The district court had found against the plaintiffs on their FLSA overtimes claims.

Specifically, the district court found that "three appellants, Haber, Ronald Tamillo and Winning,

as 'area supervisors' were within the 'administrative capacity' exemption for the overtime

requirements of the Fair Labor Standards Act." Id. at 856.  The Ninth Circuit disagreed, finding

that even though they were called supervisors, most of their work was still collections, and

collections work does not meet the administrative exemption:

> The test is not what employees are called, but what they actually did. There is no
> evidence brought to our attention of compliance with this requirement. Indeed,
> the only evidence is to the contrary. Appellant Haber testified that about sixty per
> cent of his time was spent in the nonadministrative function of collecting
> accounts. (R.T. p. 51.) Ronald Tamillo estimated about eighty per cent of his time
> was spent on telephone collections or dealing with merchandise. (R.T. p. 589.)
> Winning estimated that fifty per cent of his time was spent as a telephone
> collector. (R.T. p. 159.)....The court's conclusion that Haber, Ronald Tamillo and
> Winning were employed in an 'administrative capacity' is erroneous and must be
> reversed.

Id. at 857.

Likewise, in Scarmato v. Northern California Thrift Co., 184 F.Supp. 420 (N.D. Cal.

1960), the Court found that collections activity did not fall within the administrative exemption.

The Scarmato court described the plaintiffs as follows:

> From February 13 to September 30, 1958, the period in issue, plaintiffs were
> employed by defendant as collectors of delinquent accounts. Both were hired by
> Joseph Marchese, branch manager, who testified that the terms of employment
> included a 40-hour work week— 9 A.M. to 6 P.M. Monday through Friday.

Id. at 422.  After the plaintiffs claimed that they were entitled to overtime compensation under the FLSA, the defendant responded that no overtime was due because the plaintiffs were exempt employees.  Id.  The court rejected that argument, making clear its opinion that collection activities do not fall within the administrative exemption:

> Defendant's argument in chief is that plaintiffs are exempt as 'administrative' employees. The record reveals that each plaintiff reported directly to Marchese, that neither plaintiff supervised the work of any other employee, and that both were occupied principally with their collection activities, in which they did exercise limited discretion and judgment. There is no evidence that either plaintiff's primary duty was work 'directly related to management policies or general business operations' of his employer, nor that he directly assisted an executive, performed specialized or technical work, or executed special assignments.  Hence, plaintiffs were not 'administrative' employees as defined by the regulations.

Id. (citing 29 C.F.R. § 541.2).

The Court in Dole v. Diversified Collection Services, Inc., 1990 U.S. Dist. LEXIS 14115 (N.D. Ill. 1990), comes the closest to supporting defendant's position, holding that a genuine issue existed concerning whether the collections personnel in that case fell within the administrative exemption.  The Dole court described the defendant ("DCS") as "engaged in the business of collecting delinquent educational loans for its clients, which are educational institutions and state guaranty agencies."  Id. at *2.  The court described the plaintiffs as follows:

> In its Oak Brook office, DCS employed a general manager, an assistant general manager, a collection manager, an assistant collection manager or two, collection supervisors, collectors (also known as portfolio managers), and occasionally quality control personnel.  Plaintiff's motion for summary judgment includes claims for relief for employees employed as collectors, collection supervisors and quality control personnel.

Id. at *3 (internal citations omitted).  The Secretary of Labor sued, and moved for summary judgment in part based on whether the collectors, collection supervisors and quality control personnel were exempt as administrative employees.  The Dole court declined to enter summary

judgment, finding factual issues existed:

> the evidence presented by the parties is in direct conflict. The Secretary contends
> that DCS collection employees do not engage in administrative work because
> collecting on defaulted loans is the "production" of a loan collecting corporation.
> Additionally, the Secretary argues that the lack of discretion and independent
> judgment exercised by collection personnel supports the conclusion that the work
> is production and not administrative.  In contrast, defendants present affidavits
> demonstrating that collection personnel are engaged in many of the activities
> listed in the Secretary's regulations as indicative of administrative operations.  For
> example, defendants' affidavits state that collection personnel advised
> management whether to sue on a defaulted loan or refer it back to the client as
> uncollectible, negotiated with defaulting borrowers on repayment schedules and
> deferments/write-offs, and generally represented the company.

> Moreover, the cases cited by the Secretary for the proposition that collection work
> is "nonadministrative," are unpersuasive. Although the Secretary cites Haber v.
> Americana Corp., 378 F.2d 854 (9th Cir. 1967), as a case rejecting the
> administrative exemption because an employee spent his time in the
> "nonadministrative function of collecting accounts," the court failed to discuss the
> job duties of the employees, the discretion and independent judgment exercised
> by the employees, or the employer's business or its customers' business.
> Therefore, genuine issues of material fact regarding the applicability of the
> "directly related" test preclude summary judgment.

> Similarly, the court is unpersuaded by the Secretary's assertion that the
> undisputed facts indicate that DCS' collection personnel did not exercise
> independent judgment and discretion. The Secretary's assertion is largely based
> on the large amounts of training materials provided to DCS collection personnel,
> the "scripted" approaches detailing how to deal with defaulting borrowers, and the
> ratios of supervisors to collection personnel.  Nevertheless, defendants' affidavits
> of collection personnel clearly reveal the existence of a material factual dispute.
> For example, the affidavits state that collection personnel independently evaluated
> each loan, independently decided which methods to employ, negotiated
> independently with defaulting borrowers, and developed their own techniques.
> Although a factfinder may ultimately conclude that collection personnel merely
> applied their knowledge in following prescribed procedures or standards to
> individual cases, and hence that they did not exercise independent judgment and
> discretion[,]...[b]ased on this record, the court is unwilling to conclude that no
> genuine issue of material fact exists.

Id. at 15-17.

> In the instant case, the parties have provided extensive testimony and documentary

evidence concerning the job duties of the plaintiff and the nature of the employer's business.

Upon consideration of this evidence, the Court concludes that the defendant has not created a

genuine issue of material fact concerning whether the plaintiff's primary duty was "directly

related to the management or general business operations" of Infinite Energy.  As noted above,

the type of work performed by the employee must be "directly related to assisting with the

running or servicing of the business, as distinguished, for example, from working on a

manufacturing production line or selling a product in a retail or service establishment."  As a

matter of first impression in the 11th Circuit, the Court agrees with the Haber and Scarmato

opinions and concludes that collecting delinquent accounts is more akin to selling the product

than it is to servicing the business.  Moreover, the Court disagrees with the Dole opinion that

collecting delinquent accounts involves "many of the activities listed in the Secretary's

regulations as indicative of administrative operations."  As noted above, that list includes the

following:

> tax; finance; accounting; budgeting; auditing; insurance; quality control;
> purchasing; procurement; advertising; marketing; research; safety and health;
> personnel management; human resources; employee benefits; labor relations;
> public relations; government relations; computer network, internet and database
> administration; legal and regulatory compliance; and similar activities.

Collecting accounts receivables is obviously not listed by name.  Also, although such activity

would eventually affect the finances, accounting and budgeting of the company, collecting

delinquent accounts is not the type of forecasting, planning or company management activity

that the listed activities denote.  Simply put, the evidence provided by the parties makes clear

that a delinquent accounts collector at Infinite Energy is not servicing, managing or

administering the company, in the way intended by the administrative exemption regulations.

Also, the exercise of some discretion and independent judgment by collectors is not dispositive.

It is important to note that a salesman or worker on the production line may exercise considerable discretion and independent judgment but that does not make either employee's primary duty managing or servicing the business.

For these reasons, defendant has not met its burden of putting at issue element 2 of the test from § 541.200: whether plaintiff's primary duty is directly related to the management or general business operations.  Since the defendant must prove all three elements of that test, failure at the primary duty step means that defendant cannot put at issue whether plaintiff was properly classified as an administrative employee.  Summary judgment is thus appropriate in favor of the plaintiff on the issue of the misclassification of plaintiff as administratively exempt.

**Plaintiff's Motion for Partial Summary Judgment (Doc. 27) on the issue of whether plaintiff is entitled to a presumption of compensable overtime as a matter of law based on defendant's alleged failure to comply with FLSA record keeping requirements.**

29 U.S.C. § 211(c) provides:

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

The Department of Labor regulations further require employers to preserve, for three years, records of the (1) total daily and weekly hours employees work; (2) employees' regular hourly rates of pay for each week that overtime is worked; (3) total daily or weekly straight time earnings and (4) total weekly premium pay for overtime hours.  29 C.F.R. §§ 516.2-516.5. Although a violation of these requirements "does not result in a penalty per se, ... an employer's failure to produce evidence of the hours an employee worked and wages paid may result in the court having to approximate damages."  Genarie v. PRD Management, Inc., 2006 U.S. Dist.

LEXIS 9705, 2006 WL 436733, at *15 (D.NJ. Feb. 17,2006) (citing Anderson v. Mt. Clemens

Pottery Co., 328 U.S. at 687-88); *see also* Martin v. Selker Bros., Inc., 949 F.2d 1286, 1297 (3d

Cir. 1991) ("In the absence of adequate employer records of employees' wages and hours, as

required by the FLSA, the solution is not to penalize the employees by denying recovery based

on an inability to prove the extent of undercompensated work, but rather to allow the employee

or the Secretary to submit sufficient evidence from which violations of the Act and the amount

of an award may be reasonably inferred.").

　　　　The plaintiff argues that defendant has no time records prior to October 11, 2010, which

show the actual hours worked by plaintiff, see Doc. 28, pp. 16-17.  Thus, plaintiff concludes,

"Because Plaintiff s testimony is uncontroverted, Plaintiff is entitled to partial summary

judgment regarding the number of hours she worked for the time period before October 11,

2010." Id. p. 17.

　　　　The defendant counters that it can provide accurate estimates of the amount of hours

Shelly Oliva actually worked based on data provided in discovery of her daily first and last log

on to the Adept System which recorded all of the contacts Shelly Oliva ever had with any

account for the entire duration of her employment; first log on and last off of the Verint phone

system for 2011 and a portion of 2010, the first and last daily email over the course of her

employment, and badge entry swipes for a portion of 2011.  According to defendant, "an

examination of the Adept System, Verint phone system, email, and badge swipe data provided in

discovery show that any compensable overtime Shelly Oliva allegedly worked was so minimal

and irregular as to be de minimis."  Doc. 36, pp 11-12 (citing Oliva Depo. P Ex. F page 8, lines

2-11, page 12, lines 23-25, page 13, lines 1-11; also see Staton Depo, P's Ex. C, page 73, lines 6-

10, lines 22-24, page 75, lines7-11; see also McDonald Depo, P's Ex. D, page 58, lines 8-12.).

Based on the above evidence, the Court concludes that defendant has put at issue the actual number of hours worked by plaintiff during the entirety of her employment with defendant.  Plaintiff's own cases direct that if a defendant fails to maintain the proper employment records the result is not to impose a default-like penalty against the defendant, but instead that the Court must estimate the amount of hours worked.  Summary judgment is thus not appropriate on the issue of amount of hours worked.

**Plaintiff's Motion for Partial Summary Judgment (Doc. 27) on the issue of whether defendant acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA**

The FLSA provides that "[a]ny employer who violates ... [29 U.S.C. § 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  However, an employer may avoid liquidated damages by demonstrating that it acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA.  Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1566 (11th Cir. 1991).  "An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was 'both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " Joiner v. City of Macon, 814 F.2d 1537, 1539 (11th Cir.1987).

Here, plaintiff points to the admitted lack of investigation by defendant as to whether classifying collectors as administrative employees was proper under the FLSA.  The plaintiff quotes from the deposition testimony of defendant's controller, Vivian Boza, and from defendant's CFO, Robert Thomas, each of whom admit that no one at Infinite Energy examined the federal regulations or fully investigated whether collectors were properly considered exempt

employees from the FLSA.  In response, the defendant does not appear to respond directly to plaintiff's liquidated damages arguments but instead inexplicably discusses the standard for willfulness under 29 U.S.C.A. § 255, which applies to the statute of limitations.  In fact, defendant goes so far as to upbraid plaintiff for applying cases dealing with the very issue plaintiff raises, liquidated damages:

> all of the cases cited by Plaintiff in her Memorandum of Law, in support of her argument that Infinite Energy's classification of Plaintiff as an exempt employee was a "willful" violation, are all improperly based on the standard for determining "good faith" for purposes of assessing liquidated damages, rather than the standard for determining "willfulness" as explained by the Supreme Court in McLaughlin, consequently all of the Plaintiffs arguments that Infinite Energy's alleged violations were "willful" are without merit.

Doc. 36, p. 18.  This statement is simply wrong.  In the Complaint, plaintiff clearly asked for liquidated damages in the FLSA count, see Doc. 1, ¶ 37, and in the motion for partial summary judgment, plaintiff clearly indicated that she was seeking summary judgment on the issue of liquidated damages under the FLSA in ¶¶ 36-40 and correctly set out the "good faith and reasonable basis" standard.  Defendant is also wrong in arguing that "Plaintiff's Motion for Partial Summary Judgment inaccurately states that 'willfulness has both a subjective and objective component' and improperly shifts the burden of determining willfulness onto Infinite Energy."  Doc. 36, pp. 18-19.  As noted above, in order to fall within the safe harbor exception to the liquidated damages rule, the defendant bears the burden of proving that its violation was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.

Good faith usually requires "some duty to investigate potential liability under FLSA." McGuire v. Hillsborough County, FL, 511 F.Supp.2d 1211, 1214 (M.D.Fla.2007) (quoting Friedman v. South Florida Psychiatric Associates, Inc., 139 Fed.Appx. 183, 185-86 (11th

Cir.2005)).  To satisfy the good faith requirement, an employer must show that it acted with both

subjective and objective good faith , Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259,

1272 (11th Cir.2008), and "upon such reasonable grounds that it would be unfair to impose upon

[it] more than a compensatory verdict." Bozeman v. Port-O-Tech Corp., 2008 WL 4371313, *15

(S.D.Fla. Sept. 19, 2008).  To demonstrate the subjective component, an employer must show

that it had "an honest intention to ascertain what the FLSA requires and to act in accordance with

those requirements." Feniger v. Cafe Aroma, 2007 WL 853735, *3 (M.D.Fla. March 16,

2007)(citing Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1566 (11th Cir.1991)).

Proving the objective component of the good faith defense requires the employer to demonstrate

that it had a reasonable belief that its conduct conformed with the FLSA.  *See* Chao v. Tyson

Foods, Inc., 568 F.Supp.2d 1300, 1322 (N.D.Ala.2008).  If the employer can demonstrate that it

had both a subjective belief that it was compliant with the FLSA and that it also had an

objectively reasonable basis for its belief, then the Court may apply the safe harbor provision and

limit or deny an award of liquidated damages.  *See* Stevenson v. Orlando's Auto Specialists, Inc.,

2008 WL 4371830, *4 (M.D.Fla. Sept. 23, 2008).  However, "[a]bsent a showing of both the

subjective and objective elements of the good faith defense, liquidated damages are mandatory."

Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1566-67 (11th Cir.1991).

Moreover,  "The question of whether the good faith defense applies is an issue of mixed law and

fact for the Court, not the factfinder, to determine." Silas v. Hillsborough County,

2006WL3133026, at *6 (M.D.Fla. Oct.30, 2006) (citations omitted); *see also* NOTES TO

PATTERN JURY INSTRUCTION 1.7.1, ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL),

2005 edition.

        Having considered the evidence presented by each side, the Court finds that defendant

has not met its burden of showing that it proceeded in good faith and with a reasonable belief that its classification of plaintiff as an administrative employee was proper.  Defendant's controller and CFO admitted that no research into requirements of the FLSA was done when the issue of exemption was revisited twice in the last eight years.  Instead, "[t]he recommendation from HR was based on how others are paid, not necessarily based on an examination of the requirements under the FLSA."  Dep. of CFO Thomas, p. 13.  In order to carry its burden of proof, "The employer must plead and prove that the act or omission complained of was: (1) in good faith; (2) in conformity with; and (3) in reliance on an administrative regulation, order, ruling, approval, or interpretation of an agency of the United States." Olson v. Superior Pontiac–GMC, Inc., 765 F.2d 1570, 1579 (11th Cir.1985).  Here, defendant expressly admitted that it relied upon no regulation, order, ruling, approval or interpretation.  As such, the Court finds no genuine issue of material fact regarding liquidated damages, and summary judgment on this issue is appropriate in favor of plaintiff.

**Defendant's motion to strike jury trial demand, Doc. 32.**

In the Complaint, Plaintiff demanded a trial by jury on all three counts.  Doc. 1, ¶¶ 37, 40 & 45.  However, at the time of her hire on May 5, 2008, Plaintiff signed a "Jury Waiver" in which she waived the right to a trial by jury  "with respect to any dispute, statutory or common law claim against Infinite  Energy, Inc."  Doc. 32, attach. 1.  Thus, in Doc. 32, the defendant seeks to enforce this waiver and have the Court strike the jury trial demands in the complaint. An image of the actual Jury Waiver form is found on the top of the next page.

Jury Waiver Form, Doc. 32, attach. 1

Federal courts have recognized that "[a] party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 Fed.Appx. 820, 823 (11th Cir.2006).  Courts generally consider "the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable" to determine whether a waiver was knowing and voluntary. Id. "In this

consideration, it is not whether any particular number of factors have been satisfied, but whether, 'in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair.' " Wisthle Inv. Group, LLC v. CR Hancock Bridge, LLC, No. 2:08-cv-281-FtM-DNF, 2008 WL 2686963, at *2 (M.D. Fla. June 30, 2008) (quoting Allyn v. W. United Life Assurance Co., 347 F.Supp.2d 1246, 1252 (M.D.Fla.2004)).

Review of the form shows, first, that the Jury Waiver was conspicuous and clearly refers to claims involving overtime. Also, the place where plaintiff signed was directly below the waiver language, so the waiver was not buried in boilerplate. Furthermore, the waiver language was clear that plaintiff could take time to consider it and could consult an attorney:

> I understand that I have 21 days to consider this jury waiver agreement and seven (7) days after signing it to revoke my acceptance. I further understand that I would not be hired and/or remain employed by Infinite Energy, Inc. absent my signing this waiver. I understand that this is an important right that I am waiving and that I have had the opportunity to discuss this waiver with an attorney of my choosing.

On the other hand, the defendant is a large multi-state corporation and plaintiff does not have the kind of business experience present in cases like Bakrac, Inc. v. Villager Franchise Systems, Inc., 164 Fed.Appx. 820 (11th Cir. 2006)(plaintiff had run three hotels for over 11 years) and Winiarski v. Brown & Brown, Inc., 2008 WL 1930484 (M.D. Fla. 2008)(the Plaintiff was "not a novice in the business world considering her experience and high production as an insurance executive....[and] had over eight years of experience in the insurance industry, held insurance certifications and had previous training in business management and supervision.") Also, the agreement is one-sided, only the plaintiff waives a jury trial; the employer does not. It is also clear from the agreement that plaintiff would not be employed by defendant if she did not sign the waiver. This tends to make the waiver appear non-negotiable, especially when signed in

2008, when job prospects were tough.

Taking all of the circumstances of the situation into consideration, the Court concludes that the jury trial waiver was entered into knowingly and voluntarily.  As the Court stated in Winiarski, "[t]he mere fact that an employee signs an employment agreement containing a jury trial waiver in a 'take it or leave it' situation does not make the waiver unenforceable or unconscionable." Winiarski, 2008 WL 1930484 at *2 (citing Seaboard Lumber Co. v. U.S., 903 F.2d 1560, 1564 (Fed.Cir.1990)).  Also, although the Court recognizes the difficult job market of 2008, the situation did not rise to the level of economic duress.  Plaintiff could still have simply held out for another job without such a jury trial waiver.  The jury trial demand should thus be stricken.

For the above reasons, it is hereby

**ORDERED AND ADJUDGED**:

Doc. 30, the defendant's motion for partial summary judgment, is granted.  Judgment should be entered in its favor on Count II in its entirety.

Doc. 27, the plaintiff's motion for partial summary judgment is granted in part and denied in part.  Plaintiff is entitled to summary judgment on two issues: (1) that plaintiff does not fall within the administrative employee exemption, and (2) that the defendant is liable for liquidated damages (if any overtime pay is found to be owed) because defendant cannot show it acted in good faith and had reasonable grounds for believing its failure to pay overtime was not a violation of the FLSA. Summary judgment is denied on the issue of the amount of hours actually worked by plaintiff.

Doc. 32, the defendant's motion to strike plaintiff's demands for a jury trial, is granted. The issue of the hours worked by plaintiff, and all other remaining factual issues, will be tried in a bench trial, to be set by separate notice.

**DONE AND ORDERED** this 12th  day of October, 2012

 s/Maurice M. Paul

Maurice M. Paul, Senior District Judge